Thank you, Your Honor. May it please the Court. This obviously is an insurance defense question. There are basically four lines of potential coverage. One of those deals with property damage under the homeowner's policy. One of those deals with bodily injury under the homeowner's policy. And I'll start there. I think the key question is the question of occurrence, which has been argued extensively on both sides. And the question is whether or not the fact that my client is alleged to have intended the actions that she took therefore does not trigger an occurrence, even though the consequences are the result of intervening acts. And I think the standard comes from Ledesma, the Liberty Surplus Alliance California Supreme Court case in 2018 that says an insured's conduct is not an accident when all of the acts, the manner in which they were done, and the objective accomplished occurred exactly as the insured intended. No additional unexpected, unintended, or unforeseen act occurred. So the question is not whether or not my client was volitional in making the alleged demands and requests and communicating with people, but whether or not it is possible that the injury was unexpected, unintended, or undesigned based upon my client's conduct. And in every one of these instances of property damage, there was an intervening act that was not an act of my client that resulted in the alleged property damage. So the question is... Counsel, what do we do with the fact that there was no claim for trespass brought in the cross-claim? The cross-complaint alleges that conduct that occurred during the litigation was also conduct on which they were seeking to impose liability on my client. So they were alleging that my client engaged in... Liability under what theory? It isn't trespass because they never pled that. Well, they pleaded nuisance. And they pleaded that my client was interfering with their project by actions that occurred in the litigation in the ex parte application, which occurred, by the way, almost incredibly... Nuisance, by definition, is volitional, is it not? All intentional acts. So, I mean, obviously, the... I can't remember the name of the other party. Is it the... The Sangs. Yeah. The Sangs are basically saying she was a nuisance and acted in a way that basically made this project more expensive and longer, up to 10 years, to complete the rebuilding of the home. I'm having a hard time finding why that doesn't fit into the exclusions under both policies. For the... You're basically asking about the facts that were asserted in the ex parte application? Well, I'm trying to figure out how... What's unintended here? It seems to me that everything she did was intentional. And both policies have an exclusion for intentional conduct, do they not? Let's start with that. Number one is when a client is alleged to have made requests to change silhouettes on a roof. And in the course of... Now, there's been some confusion in this case as to what silhouettes are. They're story poles. They are things which are erected by the Sangs on the roof. But the roof was always going to be replaced by the Sangs. Who cares if the silhouettes caused damage to the roof that was going to be replaced? Their contention was that that was not the case. That in fact they had not yet decided whether to move forward with the project and that they were compelled to move forward with the project by virtue of the fact that my client caused them to do work on their roof, which in the course of performing that work damaged the roof. That's an intervening act. My client didn't do the work on the roof. My client asked for silhouettes to be changed. But if the damage is done to a roof that is otherwise going to be replaced, where's the harm? Well, the argument that the Sangs made, have been making, was that they were not required to move forward with their project. They were going to make a decision whether to proceed or not. And that they were compelled... I thought the city asked them to lower the roof so that it would improve the views of the surrounding neighbor. Yes, it was going through a public approval process. Right, and as part of that process, a condition was added requiring them to lower the roof. So wouldn't that require replacing the roof? If they went forward and used the permit. What they were saying is we got the permit, but we were still deciding whether to use it. That's their claim. Now the question is whether it was right or wrong. I'm still having a hard time understanding what's non-volitional about conduct that your client set in motion here. Because my client did not expect, intend, design that particular outcome. My client, that is unexpected, independent, and unforeseen because of actions of other parties. It's that same example from Merced that both sides started. The car is speeding. That's an intentional volitional act. The question is whether it intended to hit another car or it just hit another car while it was speeding. My client engaged in the act of asking them to make changes to their silhouettes. Intervening acts on the parts of the same are that they performed work that damaged the roof. That my client didn't do them directly. That was not the intent of my client's request. And the Sengs are alleging that they were compelled to move forward the project and compelled to lose the use of their residence and that they were facing a decision where they might not move forward at all. The question right now is what's possible. Not whether one side of the argument or another side of the argument might seem more favorable based upon a review of the pleadings. The question is what's possible. And what's possible is that my client made a statement to the Sengs asking for changes to roof silhouettes. They made changes to the roof silhouettes. The Sengs are claiming we were deciding whether or not to use our permit. We were inclined not to use our permit. But because of the damage of the roof that you caused by asking us to make changes and those changes that we made caused that damage, which my client didn't cause. Counsel, I realize that you're new to the case, but one of the problems you're having is you're making an argument now that was not made in the briefs by former counsel on behalf of your client. Actually, I think it was. This is a theory, counsel. No, I think it is made in the brief. We allege specifically that, in fact, we quote the allegation in the complaint regarding that damage. And the allegation was that they, it says that we gave in to Miskevowsky's constant demands and threats even to the point of being forced to incorporate so many versions of the roof silhouettes on the previous house that the roof of the previous house was beyond repair, leaving little choice for the Sengs but to move forward with the new project. And what I'm saying is that contention is we had a choice. We no longer had a choice. We were compelled to move forward with the project and compelled to incur the loss of the use of the property and the other things that happened. And all I'm saying is that is, is it possible, reasonably possible, the question is, is it possible that my client, that that was an occurrence, that the outcome of the case could be that they chose to move forward and incur the loss of their house because of something my client did which forced them to make a decision they might not otherwise have made. And that is the question. There's no question there was damage to the roof. Mr. Lamport, let's just turn our attention, if we could, to the umbrella policy. Yes. I think we understand your argument on the primary policy. That umbrella policy provides, the language within that policy is invasion of a person's right of private occupancy by physically entering into that person's personal residence. Right. What's ambiguous about that? Invasion of a right of private occupancy has been recognized as being somewhat vague when not tied to an antecedent. And one of the issues that we've had with the case law is, in some cases, invasion of a right of private occupancy has been referred to as other invasion of a right of private occupancy where it follows in succession to other things like wrongful eviction. And the court is seeing cases that are looking at invasion of right of private occupancy in that context. And when it's independent of that, then the question is, what's an invasion of the right of private occupancy? In the most basic sense, it's the right to exclude others from your property. The other ambiguity, if you will, is what is a personal residence? Does it include the grounds that are within the enclosure of your property? Or is it just the dwelling, the structure? I thought they had a court order that permitted her to enter onto the grounds of the property. There is, and there was a contention that my client nevertheless trespassed. How could that be a trespass if they have a court order that apparently authorized her without limitation to enter onto the property? The contention was that my client and her inspectors were not properly on the property in accordance with that order. That was the contention. Well, if that was the case, then why was there an ex parte application to basically vacate the order? It sounded like the order was very broad. It was. Although neither side made it a part of the record, so we're left totally to speculate as to what the contents of the court order was. I didn't realize it wasn't in the record, but it was an order that allowed my clients and her engineers to see the installation, and in some cases where it had been buried, to expose what had been buried. But, again, the issue is that they're claiming that when my client was on the property, my client's agents basically vandalized the property. I don't think the court order was an authorization for vandalization, and that was really the argument. Again, Counselor, there's no claim, though, that's been raised in the cross-complaint about damage to property from trespass. Well, the standard is whether the claim has been alleged or could be alleged in the lawsuit, and the lawsuit did say that my client's conduct in the litigation was a basis for liability. So, again, we are looking at what's possible, and I think the court is taking a very narrow construction of what is possible. They alleged more than once that my client's conduct in the litigation was sufficient to, was part of their claim for liability. And that included, I mean, they were alleging that my client did basically vandalize or her agents vandalized their property while on it. And where in the record do I find that? I don't remember seeing anything about vandalizing property. As I understood the argument, it was that she simply entered at odd hours of the day and night, and that somehow this was not contemplated by the order. But, again, since neither side gave us the order, we're totally in the dark here as to what the true state of facts. Well, what they contend is that my client's representatives rummaged through the property and tampered with equipment. Now, that's an act of vandalism, and we described it that way. You'll see that in the reply brief. But what they contended was essentially an act of vandalism. They rummaged through the property and they tampered with it. And where in the record can you refer me? What's your citation so that I can see allegations of vandalism to equipment and property? It was quoted in our brief. If you give me a moment, I may, well, I don't want to lose my time over it, but I can find the citation for the court. Why don't you do it for your rebuttal? You can use your counsel's time. But just to close out that concept, the answer to the question of ambiguities is, is entering onto somebody's property and being accused of doing something that was resulting in, essentially, vandalism, and whether or not the residence includes everything that's part of a residence. If someone, in this case, was in the yard, entered into a yard, whether that is part of the residence, or whether or not residence is a much narrower term, we know from the rules of construction that we look at that more broadly. And the only item we haven't talked about right at this point is wrongful eviction, which is the question as to whether or not my client's actions are alleged to have forced them to leave their property. I thought they were not occupying the property at the time, were they? I thought the whole house was under reconstruction and they were living elsewhere. Well, they eventually left the house and moved elsewhere, yes, but what we're talking about is what forced them to vacate their premises and live elsewhere. That's the contention that's being made against my client, and it turns out the same allegation. You're saying that they never intended to move out at all, given the extensive nature of the renovations to the property? I'm saying that they are contending that they may not have gone forward with the project had it not been for my client's conduct, that my client forced them to move from the property, and that they were forced to move from the property as a result of actions my client took, which made it impossible for them to stay there and not renovate the house, which was a choice that they said that they were prepared to make. That's the reason why they said they had no choice. All right, so counsel, I'm going to stop you there. I'm going to go ahead and give you two minutes for rebuttal, but if you could go ahead and look up the answer to Judge Tallman's question during co-counsel's argument. All right, Mr. McGuire, you have the floor. Good morning, Your Honors. Michael McGuire on behalf of State Farm. May it please the Court. The district court did not err in denying the appellant's motion for partial summary judgment, nor did it err in granting State Farm's motion for partial summary judgment. The trial court correctly determined that there was no tribal-issued material fact with respect to the question  The trial court did this after considering the pleadings and the extensive evidence and properly concluding that there was no potential for coverage under either the appellant's homeowner's policy or personal liability umbrella policy. Now, as to the homeowner's policy, coverage for the insured's liability stands for bodily injury or property damage caused by an occurrence. An occurrence is an accident. Now, the operative cross-complaint alleges that appellant undertook a calculated and relentless campaign of harassment against their neighbor, Fitzisangs, with the intent to impede and delay their ability to construct a new home. The appellant is alleged to have made unreasonable demands, threats, and intentional misrepresentation. She's also alleged to have intentionally harassed and tried to intimidate Fitzisangs' construction workers. The appellant's actions were described in the cross-complaint very clearly as being calculated, intentional, and knowingly undertaken. Based on this, the district court correctly noted in our opinion that while the results of the appellant's actions may have been unintended consequences, they were unintended consequences of intentional condor. Based on this finding, the court concluded that none of the claimed damages resulted from the appellant's accidental condor. Now, counsel has made mention of the fact that the condor could be deemed accidental because the appellant did not intend her actions to cause injury. State Farm submits that that assertion is misplaced and irrelevant. The subjective intent to harm is immaterial to an intent to act, and we've cited the Quan v. Truck Insurance Exchange case for that proposition. The determination of whether coverage extends for an action refers only to the actor's condor, not his or her state of mind. The only question in determining the existence of an occurrence is whether the acts were deliberate. In this case, they all were. Here, while the consequences may have been unintended, the conduct that led to those consequences on the part of the appellant were all intentional, volitional, and purposeful. Her actions, regardless of an intent to injure, were not accidental. Appellant has also made this contention that some of the injuries alleged were the result of the actions of the dissent, and counsel has mentioned that damage to the roof resulted not from the appellant's action, but instead from work undertaken by the dissent. As a preliminary matter, the cross-complaint does not contain any allegation that Ms. Godowsky caused any damage whatsoever to the roof. The cross-complaint alleges, and I'll read it, the dissents were forced to incorporate so many versions of the roof silhouette that the roof was beyond repair, leaving little choice but if the dissents were to move forward with the project. The project had already started. Appellant's argument that the damage was not of her doing ignores the proximate cause of the dissent's actions. But for the appellant making deliberate demands, the dissent's act of trying to incorporate multiple versions of the silhouettes would never have occurred. The fact that the dissent acceded to the appellant's demands and actually tried to incorporate multiple versions of the roof silhouettes, as demanded, was a natural response to being compelled to do so. The dissent's acquiescence was not an unexpected or independent unforeseen response. Their acquiescence was not only the desired response, but more importantly, clearly foreseeable. So to the extent that there was any diminution in the value or utility of the roof, it was due to Ms. Godowsky's intentional actions. And as the court rightfully noted, this is a construction project that started in 2011. These conversations about the silhouettes occurred much later than that. This project was already in place. Council has also mentioned the possibility of a finding of accidental conduct based on a possible future claim of negligent hiring or supervision and that that may cause, may be deemed an accident so as to... Hey, Mr. McGuire, if you could actually pause for a second. We've lost... Courtroom deputy, if you could stop the clock. I'm sorry? There's Mr. Lamport. Okay. I was rummaging around here and didn't want the court to be distracted by... Okay. No, no pride. I just want to make sure we haven't lost you there. Over here and over there. I just thought it was... Fair enough. Okay. I'm sorry, Mr. McGuire, to jump in like that. You may resume. Oh, thank you. This claim of negligent hiring or supervision, it stems from the statements made in the ex parte application which sought to modify or terminate the court orders that we've been discussing, which, as your honors have pointed out, court orders that allowed the appellant to access the property. The ex parte contained representations that the appellant or her agents entered the construction site after hours in disturbed soil and moved equipment. Now, the appellant contends that these ex parte representations, to the extent that they were directed at the agents, could possibly, potentially, maybe, lead to claims of appellant being pursued for negligent supervision or hiring. Well, first of all, no such claim for negligent supervision or hiring has ever been alleged in either the ex parte or, more importantly, in the cross-complaint. Also, an insurer is not required to speculate how a third party could possibly, potentially, amend to bring its allegations within coverage. Secondly, there are no damages of any kind, none, that were ever sought for these acts. It's a saying simply sought to modify the ex parte out of a concern that they might be subject to liability down the road for the unsupervised after-hours presence of the appellant or her agents. So, the bottom line is that no claim of negligent hiring or supervision has ever been made. It has never been discussed by the dissent, nor have they ever sought to recover any damages for the after-hours entry onto the property. Because the district court found no occurrence, it didn't reach or address the issue of whether there's a saying alleged either bodily injury or property damage caused by an occurrence. So, for purposes of this oral argument, I will skip over that and go to the more important issues of the plot policy and whether or not there was any coverage there. The appellant asserts that there are potential for coverage also exists by virtue of two separate cover defenses contained within the personal injury component of the plot. The first is wrongful eviction. The appellant claims that her conduct resulted in the displacement of the Tsangs from their home and that this constitutes a wrongful eviction. The operative cross-complaint alleges again construction commenced in 2011, that the Tsangs at that time began the process including applications and the process and the project included not only regrading and pouring of a whole new foundation. This place was going to be taken down and rebuilt from the ground up. The process obviously required the Tsangs to vacate the property. The cross-complaint alleges that through her intentional actions, the appellant caused delays in the construction process that extended the period of displacement. The cross-complaint did not allege that the demands or the threats or the interference with the project caused or forced the Tsangs initially to vacate the property. There is no allegation of that. It is an allegation of extending the period of displacement. State form would submit that this enhancement or extension of the period of displacement is not an eviction. Now, the appellant has asserted that virtually any act that forces another out of their home is an eviction. I would submit that that expansive definition would lead to rather absurd results. By that definition, one could find a wrongful eviction when forcing a third party homeowner out of their own home by things such as throwing a canister of tear gas into the home, setting the home on fire, releasing a wild animal into the home. All of these would have the effect of causing the resident to leave the premises, but none can logically be deemed an eviction. We submit that the plain, common, definitional meaning of the term eviction is to expel by legal process and to recover rightfully owned property by superior title, claim, or otherwise. Here, the appellant never availed herself to the legal process, nor did she ever assert a superior claim or title to the property, nor did she recover or even have the right to recover any of the property. So, using the plain and ordinary common sense understanding of the term, there was no eviction, wrongful or otherwise, nor should the operative pleadings be shoehorned into making such a finding. So, no coverage under the plot as it relates to wrongful eviction. This leads to the last potential for coverage as asserted by the appellant, and that has to do with the alleged trespass onto the construction site, constituting the cover defense of an invasion of a right of private occupancy by physically entering into that person's personal residence. Again, the claim stems from the extrinsic evidence in the ex parte application, which I would note was filed well before the commencement of the litigation. The point being that had the Tsangs sought to recover any damages for trespass, they could have and easily could have done so in the subsequently filed lawsuit. They did not do that. They sought no damages, nor did they bring that up. The ex parte, as mentioned, contains the representations that the appellant or her agents entered the construction site after hours and disturbed or moved the soil and moved or touched equipment, thereby calling it a tampering of some sort. There is no dispute that the policy language requires that the invasion of a private right of occupancy be tied to the very specific act of entering into that person's personal residence. So, as to the component of the invasion of the right of private occupancy, it's really important to note that not only were the Tsangs not living at the property at the time of the alleged trespass, the property in question was an ongoing construction site where presumably the construction workers were milling about the entire site doing their construction work. But perhaps more important, and I think... Can I stop you there? Sure. This notion of what constitutes a personal residence, whether or not that is the home itself or whether or not it includes the yard and other grounds around the home, it appears to me that State Farm is contending that we should simply look at the language which I cited to Mr. Lamport. But can you cite to any authority in terms of what a personal residence is specifically that it refers only to the inside of one's home and not the yard and outer grounds? Is there any authority for that argument? Your Honor, I cannot cite to anything at this moment. I know that there are definitions contained within, unfortunately, not the personal liability umbrella policy, but the homeowner's policy. But being as we are discussing the PLUP right now, I believe the answer to your question is no, that is not defined in the PLUP policy, and I have not cited a case that says a personal residence is limited to the walls of the structure. I would submit, however, that by making more clear the fact that the actual coverage says that it must be entry into a personal residence as opposed to onto a grounds or a yard or an open space. I would submit, Your Honor, that that provides the further definition to make clear that we are talking about a very specific event to trigger this coverage, that being entry into. You don't go into an open space. You don't go into a construction site. You go onto, and all of the activities that are alleged here are referencing things that are outside of what would have been otherwise the structure. Moving the soil, touching the equipment, tampering, whatever. So, I would submit to you that entering into a person's personal residence that the qualifier into suggests you must go within some boundary. In this case, we're talking about the construction site. Counsel, if I could ask you real quick about, it's about the umbrella policy, but it actually links back to the homeowner's policy. There's some language in the homeowner's policy, which I'm just trying to understand, and I'll direct you to your excerpts of records on page 13. That's the copy of the homeowner's policy, and there's a definition of residence premises. Can I get that again, Your Honor? Sure. The supplemental excerpts of record 13, it has the homeowner's policy there, and it has definitions. Now, again, this is not the umbrella policy, but this kind of leads into my question. So, at the bottom of page 13, it defines residence premises as one, two, three, or four-family dwelling, other structures, and grounds. And then it says where you reside. And I'm trying to understand that, and that's in the homeowner's policy. The umbrella policy and the homeowner's policy, are they linked or not? Can you kind of walk me through this definition, and if it's relevant or not to the umbrella policy? Well, they are not necessarily linked. Of course, in order to avail yourself to the coverages of the PLUP policy, there has to be a precondition that there is no coverage under the homeowner's policy. So, no, they are not linked in that regard, and Your Honor is correct. This term does not appear defined in the PLUP policy. So, for purposes of determining that language, no, there is no definition. And I take it you would argue that where it says where you reside, that in this case, the sayings did not reside there. Not only were they not there at the time, that we have no information that there was even a structure in place at that point or the state of its construction. We don't know any of that. So, I would submit that not knowing what actually occurred and the fact that the acts that were actually defined and referenced were the movement of soil, which they were permitted to do by the court order, or the amorphous reference to touching or tampering with equipment. Certainly, none of that constitutes property damage, but it's also an act that was sanctioned by the court order. I would submit that none of that has anything to do with entry into a structure that we don't know exists or the state of its existence. So, but I think it's critical to look at the qualifying, defining qualifier of into. Into the person's personal residence. And again, personal residence is different than residence premises. A personal residence, I would submit, again, not defining the policy, but I would submit it is where the person resides, where you go into to reside. Great. Unless my colleagues have any questions, we'll head back to counsel for their feedback. Just one quick follow-up. Refresh my memory. Was the umbrella policy issued by State Farm as well? Yes. All right. Thank you. Great. Mr. Lamport, we have two minutes. You may proceed. All right. The reference is ER 40-41, which quotes from the declaration of the lawyer who was asserting, who was representing the Sands, who was asserting what occurred on the property. This is the ex parte application? Yes, but it's quoted in the document. Okay. It's not just a general reference. There was a quotation in the PSUF 1718. It's ER 40-41. I think the court needs to keep in mind this is for a defense. We're not talking about what the actual coverage would be when the case is finally concluded. And that makes a big difference because the question is whether it is possible that the claims are covered, not whether it is. And really the burden here is, and for the court to decide, is whether it would be impossible to assert a claim. So on the one hand, we're arguing about whether the Sands were going to demo their house and move forward despite the conduct of Ms. Kodowsky and despite the allegations in the complaint. And then you've got an allegation in the complaint that basically says that Ms. Kodowsky's conduct forced them to so damage their roof that they were forced to vacate the property and move forward with their project, which involved demolishing their house and then incurring all of the stress and other things that they claim, followed from the loss of use of that, resulting from the damage to their roof. Is it possible that that is the claim that is going to be litigated in this case? And the answer is that it clearly is being litigated in the case. There's a difference between intentional conduct and the relationship and what is meant by an occurrence. And I go back to Ledesma because it says, an insured's conduct is not an accident only when all of the acts, the manner in which they are done, the objective accomplished, occurred exactly as the insured intended. It uses the word intended. California Supreme Court uses the word intended. No additional, unexpected, independent, or unforeseen acts occurred. And what's important here is California's been grappling with battery cases. How do we provide a defense for sexual assault and sexual battery? And so it is distinguished between those cases and nooses cases involving things like pollution, things like trespass for that matter. And this language is distinguishing between intent for purposes of an occurrence, meaning that there are intervening acts. Everything that resulted in the injury was not under the control of the insured. That is the allegation in the complaint here. And that is why intent is relevant. All right, counsel, I need you to start wrapping up, okay? I just wanted to quickly get to two other points. One is the court needs to distinguish between a right of private occupancy and the property damage that occurred during the time that people were on the property. Those are two separate lines of coverage. Occupancy doesn't matter when we're talking about someone's residence. In this case, the... counsel's arguing that we don't know what was happening. In fact, if you look at what is in the undisputed facts, the house had been constructed. They were doing the exterior work. You have a right to exclude people from a property that is your residence. They were setting up this property for their residence. I thought their residence was a rental property where they were actually... They were living temporarily at another property. Why isn't that their residence? Well, I mean, the question... And the other is just a construction site. No, it's their home. It may well be intended to be a future residence, but it would not be accurate to say that a vacant plot of land with either... that may or may not have had a partial structure on it is their residence. Well, there's nothing... I mean, that's not the record in this case that it was a vacant plot of land. It was an existing residence that they demolished and put a new residence on top of. It is their personal residence. It was built for that purpose. Well, it later became their personal residence, but you're drawing a distinction here that I'm not sure the record supports where nobody disputes that at the time that the entry on the property occurred, they were living elsewhere. Where does this policy say that you have to be residing in your residence at the time that the activity occurs? Well, we're looking at the language that talks about the invasion of personal residence. Right, but the residence... The residence has been invaded if there's nobody actually residing there. Well, what if they went on vacation for six months? I mean, the point I'm trying to make is residence is not clear that you have to be residing there as your principal residence at the time that it occurs. There's nothing in it that says that. It just says it's a property that is your personal residence. It's ambiguous. Because it does not include the additional element that the court is adding to it that it is physically occupied as a residence at the time this occurs, or whether or not the property is essentially that person's residence in the sense that a home that they have and will reside in is occupying that site. That's the point. All right, counsel. We're way over time on this one. I'll give you one more sentence. Just with the invasion of... I mean, with respect to wrongful eviction, the issue really comes down to forcing someone out of one's property. And that is the common understanding of eviction. And we can't graph a more narrow wrongful eviction like somehow it's an unlawful detainer when that's not what the language refers to. The common understanding of evicting someone is that you force them out of their property. And the sayings have alleged that Minsky-Dowski took actions that forced them to move from their property. And the only question is, what's possible? Is it possible that the complaint asserts that claim? Or is it impossible to maintain that the complaint asserts that claim? And my client strongly believes that it is possible that there is a potential for coverage under the policy and for purposes of the duty to defend, that is what the court's focus needs to be on. Thank you very much, counsel. Thank you both for your argument and briefing in this case. This matter is submitted. We'll go ahead and move on to the final case for argument today.
judges: Tallman, Owens, Christensen